UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FALLING CREEK INVESTMENTS, INC.,<br><br>Appellant,<br><br>v.<br><br>JUAN CARLOS BRONCANO-DAMIAN,<br><br>Appellee. | CIVIL ACTION NO. 3:24-CV-01462<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is an appeal of the bankruptcy decision rendered by Judge Henry W. Van Eck on June 4, 2024, filed by Appellant Falling Creek Investments, Inc. ("Falling Creek"). (Doc. 1). Appellee Juan Carlos Broncano-Damian ("Broncano-Damian") filed a response on October 23, 2024. (Doc. 15). For the following reasons, Judge Van Eck's bankruptcy decision will be **AFFIRMED**.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

A.   THE UNDERLYING REAL ESTATE AGREEMENT

This dispute arises out of a contract for the sale of real property between Falling Creek and Broncano-Damian. (Doc. 7, at 7). On February 7, 2017, Falling Creek entered into an agreement ("the Agreement") with Broncano-Damian for the sale of real property ("the Property") located in Straban Township, Adams County, Pennsylvania. (Doc. 7, at 7; Doc. 15, at 7). Per the Agreement, Broncano-Damian was to receive $440,000.00 for the Property, with a $10,000.00 deposit. (Doc. 7, at 7; Doc. 15, at 7). Falling Creek had development plans for the Property, so the Agreement contained a One Hundred Eighty (180) day period for

1

Falling Creek to obtain the necessary township, county, and state approvals to do so and to perform its due diligence on the Property in conjunction with a neighboring parcel. (Doc. 7, at 7; Doc. 15, at 7). After the expiration of the due diligence period, the parties had sixty (60) days to close the transaction. (Doc. 7, at 7). Ultimately, Falling Creek avers it paid $68,394.71 in fees to gather the land development plans and zoning approvals for the development of police barracks, in conjunction with additional land unattached to the Property. (Doc. 7, at 7; Doc. 15, at 7). Falling Creek also claims to have expensed $234,435.97 to cover "property acquisition expenses." (Doc. 7, at 7-8; Doc. 15, at 7). The closing, however, did not go through, and Broncano-Damian still lives on the Property. (Doc. 15, at 7).

  B. STATE COURT LITIGATION

Falling Creek sued Broncano-Damian for breach of the Agreement in Pennsylvania state court. (Doc. 7, at 8; Doc. 15, at 7). Falling Creek alleged that it sought to purchase the Property, together with an adjacent piece of property, to develop both together as a state police barracks to be leased to the Commonwealth of Pennsylvania. (Doc. 15, at 7). Falling Creek sought to recover the expenses expended and the loss of profits caused by the breach of the Agreement. (Doc. 7, at 8). Proceeding *pro se*, Broncano-Damian failed to file any response to a motion for summary judgment filed by Falling Creek. (Doc. 15, at 8). Regarding the issue of liability for the breach of the Agreement, the state court issued summary judgment in Falling Creek's favor. (Doc. 15, at 8).

  C. BANKRUPTCY PROCEEDINGS

On April 14, 2023, Broncano-Damian filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code in the Bankruptcy Court for the Middle District of

Pennsylvania. (Doc. 7, at 4; Doc. 15, at 5). Falling Creek filed an unsecure proof of claim for $750,000.00, to which Broncano-Damian filed an Objection and an Amended Objection in response. (Doc. 7, at 4; Doc. 15, at 8). The Honorable Henry W. Van Eck held hearings on the Debtor's Amended Objection to Falling Creek's Claim on August 29, 2023 and December 6, 2023. At a hearing on June 4, 2024, the Bankruptcy Court totaled the damages sought by Falling Creek as follows:

> $10,000 for the return of the deposit…["Deposit Damages."]
>
> $83,271.51 for Township land development and zoning approvals…["Development and Zoning Damages."]
>
> $47,499.97 for property acquisition costs for a State Police Barracks…["Acquisition Damages."]
>
> $177,789.36 for interest in legal fees related to financing…["Financing Interest Damages."]
>
> $180,156 even for four years of lost rental income from a police barracks…["Lost Rental Profit Damages."]
>
> And $644,184 and zero cents for lost profit from the anticipated resale of the police barracks after four years…["Lost Resale Profit Damages."]
>
> (Doc. 15, at 8; Doc. 8-5, at 43-44).

This totals $1,142,900.31. (Doc. 15, at 8). The Bankruptcy Court also addressed the Amended Objection, sustaining it to the extent Falling Creek sought "special damages" in the amount of $1,002,129.36, comprised of damages for interest and legal fees and related to the Financing Interest Damages, Lost Rental Profit Damages, and Lost Resale Profit Damages. (Doc. 7, at 5). The Bankruptcy Court also overruled the Amended Objection in regard to Falling Creek's recovery of the deposit, totaling $10,000.00, and for loss of bargain damages. (Doc. 15, at 9). However, regarding the loss of bargain damages, the Bankruptcy Court held that because

3

Falling Creek had presented no evidence of the Property's value at the time of breach, recovery was limited to nominal damages of $1, for a total award of $10,001.00. (Doc. 15, at 9). The Bankruptcy Court also concluded that Falling Creek was entitled to general damages, "limited to the costs of a title search, survey costs, inspections, and any other expenses directly referenced in the contract, each relating exclusively to this parcel of real property." (Doc. 8-5, at 57; Doc. 15, at 9).

The Bankruptcy Court ordered Falling Creek to file a revised demand for damages consistent with the Bankruptcy Court's ruling within thirty days of the June 4, 2024, Order. (Doc. 8-5, at 65-66; Doc. 15, at 10). On June 26, 2024, Falling Creek filed its Revised Demand for General Damages. (Doc. 7, at 5; Doc. 15, at 11-13). The Revised Statement of Damages listed the development and zoning damages as $68,394.71 and acquisition damages as $23,435.97. (Doc. 8-5, at 67-69; Doc. 15, at 11). The Bankruptcy Court held a hearing to address the Revised Demand on July 7, 2024. (Doc. 15, at 11). At that time, the Bankruptcy Court rejected Falling Creek's revised request for general damages, finding that Falling Creek had failed to distinguish between the costs incurred in preparing the Property for use in conjunction with additional land as police barracks and the costs incurred to prepare for closing on the Property alone. (Doc. 8-5, at 74; Doc. 15, at 12). The Bankruptcy Court provided Falling Creek with an additional thirty days to amend its demand for general damages, but to limit those demands to be tailored to damages incurred "[t]o purchase the property, not to use it." (Doc. 8-5, at 74, 84).

4

As Falling Creek opted not to file a second Revised Demand for Damages within the designated deadline, the Bankruptcy Court issued a final order on August 15, 2024. Falling Creek was awarded a total of $10,001.00. (Doc. 8-5, at 86-87).

### D. APPEAL OF THE BANKRUPTCY COURT'S DECISION

On August 28, 2024, Falling Creek filed a timely appeal of the Bankruptcy Court's final order. (Doc. 1). Falling Creek filed its Appellant's Brief on September 25, 2024. (Doc. 1; Doc. 7). The relevant bankruptcy court transcripts were filed on October 1, 2024. (Doc. 10; Doc. 11; Doc. 12; Doc. 13; Doc. 14). Broncano-Damian filed an Appellee's Brief on October 23, 2024. (Doc. 15). Falling Creek filed a reply brief on December 5, 2024. (Doc. 18). Accordingly, this motion is ripe for disposition. (Doc. 1; Doc. 7; Doc. 15; Doc. 18).

## II. LEGAL STANDARD

This Court has subject matter jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). "The district courts of the United States shall have jurisdiction to hear appeals ... from final judgments, orders, and decrees [entered by the Bankruptcy Court]." 28 U.S.C. § 158(a)(1). "Because of the unique characteristics of bankruptcy proceedings, finality is viewed 'in a more pragmatic and less technical sense.'" *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 384 (M.D. Pa. 2007) (quoting *718 Arch St. Assocs., Ltd. v. Blatstein (In re Blatstein),* 192 F.3d 88, 94 (3d Cir. 1999) (internal citations omitted)). "An appeal of a Bankruptcy Court's order is taken 'by filing a notice of appeal with the clerk [of the Bankruptcy Court] within the time allowed by Rule 8002.'" *In re Rose Color Inc.*, 198 F. App'x 197, 200 (3d Cir. 2006) (quoting Fed. R. Bankr. P. 8001); *see also Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 494 (3d Cir. 1998) (stating "[a] party may 'appeal from a final judgment, order, or decree of a bankruptcy judge to a district court' as of right 'by filing a notice of appeal with the

5

[bankruptcy court] clerk within the time allowed by Rule 8002.'" (quoting Fed. R. Bankr. P. 8001)). "In reviewing a bankruptcy court's decisions, we review its legal determinations *de novo,* its factual findings for clear error, and its exercise of discretion for abuse thereof[.]" *In re RBGSC Inv. Corp.*, 253 B.R. 352, 362 (E.D. Pa. 2000). The "clearly erroneous" standard "is fairly stringent: 'It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data[.]" *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs. Inc.,* 57 F.3d 1215, 1223 (3d Cir. 1995) (quoting *Hoots v. Pennsylvania,* 703 F.2d 722, 725 (3d Cir. 1983)). "A finding of fact is clearly erroneous when it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data." *Jordan v. Wolf (In re Wolf)*, 573 B.R. 179, 182 (E.D. Pa. 2017) (cleaned up). Meanwhile, a *de novo* review requires a "fresh" review of the Bankruptcy Court's conclusions of law. *In re LTL Mgmt., LLC*, 64 F.4th 84, 99 (3d Cir. 2023).

### III. DISCUSSION

As a general matter, Pennsylvania law requires the party seeking damages for breach of contract claim to prove the following three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *J.F. Walker Co. v. Excalibur Oil Grp., Inc.*, 2002 PA Super. 39 (Pa. Super. Ct. 2002) (internal quotations omitted). The parties do not dispute that the Agreement is the governing contract in this matter and that Broncano-Damian breached it without justification. The parties instead dispute the third prong of a breach of contract claim regarding the resulting

damages, specifically whether the damages resulting from this breach were properly calculated and awarded by the Bankruptcy Court. The questions now before the Court are whether the Bankruptcy Court erred by (1) applying the wrong measure of damages when determining Falling Creek was entitled to its deposit and nominal damages instead of Falling Creek's proposed calculation of acquisition costs and (2) rejecting Falling Creek's claims for expenses for loss of rental profits and loss of resale profits. (Doc. 7). The Court will address each these damage awards in turn and will **AFFIRM** the Bankruptcy Court's decision on both.

### A. Falling Creek's Claim for Damages Incurred while trying to acquire the Property

According to Falling Creek,

> The Bankruptcy Court erred and abused its discretion in rejecting the [Falling Creek's] claim for expenses incurred in trying to acquire the property in the form of expenses for obtaining approvals (land development and zoning $83,271.51), and costs incurred in acquiring properties for development. It is submitted that the Court further erred in rejecting the Revised Statement of Damages submitted to the Court's Order of June 4, 2024.

(Doc. 7, at 16).

Falling Creek continues, "in reaching these decisions, the Bankruptcy Court determined that these damages were not foreseeable, and that the damages should be limited to the one (1) property." (Doc. 7, at 16). As Falling Creek understands it "foreseeability is not an issue for the recovery of the deposit, expenses and interest to make the [Falling Creek] whole, which would be the case if the breach was in good faith, which the Court determined it was not." (Doc. 7, at 16). Broncano-Damian argues otherwise, providing "[t]he Bankruptcy Court found that Falling Creek provided no evidence of the value of the land at the time the

Agreement was breached and noted that '[i]f no damage is shown, then the recovery is limited to a nominal amount.'" (Doc. 8-5, at 52; Doc. 15, at 16). Thus, "[b]ecause no damage was shown by Falling Creek, the Bankruptcy Court properly limited recovery to a nominal amount and there was no error." (Doc. 15, at 16). Broncano-Damian further avers:

> In sum, the Bankruptcy Court correctly found that Falling Creek provided no evidence that the [Broncano-Damian] knew of the purpose for which Falling Creek was purchasing his Property, so the [Broncano-Damian] is not presumed to have knowledge of any of the third-party contracts involving other properties. As such, the Bankruptcy Court committed no error in finding that expenses related to outside contracts are special damages that were not foreseeable and thus not recoverable.

(Doc. 15, at 18).

At issue here is the extent and nature of the acquisition costs Falling Creek may recover as damages due to Broncano-Damian's breach of the Agreement. (Doc. 8-5, at 46-47). Overall, Falling Creek's appeal stems from a breach of contract claim and Pennsylvania state law governs. (Doc. 8-5, at 46). In Pennsylvania, like most jurisdictions, contract damages are generally designed to place the non-breaching party in the position they would be in but for the breach. *Fort Wash. Resources v. Tannen*, 901 F. Supp. 932, 943 (E.D. Pa. 1995); *Bellefonte Area School District v. Lipner*, 81 Pa. Cmwlth. 334, 339 (1984). In Pennsylvania, a party may be awarded general damages, which "are the usual and ordinary consequences of the wrong done," and/or special damages, which are "not the usual and ordinary consequences of the wrong done but which depend on special circumstances." *Hooker v. State Farm Fire & Cas. Co.*, 880 A.2d 70, 77 (Pa. Commw. Ct. 2005). In the real estate context, general damages are typically limited to money actually paid by the buyer, such as a downpayment or other expenditures. *See generally Schoenholtz v. Half Moon Land Co., LLC*, 245 A.3d 1114 (Pa. Super.

8

Ct. 2020). Either way, foreseeability is a requirement for the recovery of either type of damages. *Ebasco Servs., Inc. v. Pa. Power & Light Co.*, 460 F. Supp. 163, 213 n.62 (E.D. Pa. 1978)) ("Foreseeability is a requirement for recovery in any case.")).

Here, the Bankruptcy Court found Falling Creek is entitled to reasonably certain general damages because "the debtor has offered no justification for failing to convey the real property to Falling Creek. This renders his failure to perform under the contract unjustified." (Doc. 8-5, at 47, 51-52). In making this decision, the Bankruptcy Court correctly quoted the Third Circuit's conclusion in *Dehart v. HomEq Servicing Corp.*, which provides, "[w]here a party breaches a contract for the sale of land without any legal justification, the non-breaching party is entitled to recover damages that can be proved with reasonable certainty unless the contract provides otherwise." 679 F. App'x 184, 190 (3d Cir. 2017). When calculating the reasonably certain damages Falling Creek is entitled to, the Bankruptcy Court looked first to damages for "loss of the bargain." (Doc. 8-5, at 51). As explained by the Bankruptcy Court, "[l]oss of the bargain damages are measured by the difference between the contract price and the market value of the land at the time of the breach, plus interest on that amount." (Doc. 8-5, at 51) (citing *Bitner v. Brough*, 11 Pa. 127, 138 (1849)). However, the Bankruptcy Court also explained that if no damage is shown, only a nominal amount is recoverable. (Doc. 8-5, at 52). The Bankruptcy Court concluded that, based on the record before it, "apart from the contract price, Falling Creek provided no evidence of the land's value at the time of the breach." (Doc. 8-5, at 52). Thus, "in line with Pennsylvania law," the Bankruptcy Court awarded "Falling Creek nominal damages of $1 as its loss of the bargain general damages." (Doc. 8-5, at 52). Even considering Falling Creek's Revised Statement of Damages, the

Bankruptcy Court found that the new calculation of acquisition costs was deficient because it blended costs incurred for the purchase of the Property with other expenditures related to developing it and additional land for future uses not accounted for in the Agreement. (Doc. 9-4; Doc. 9-5, at 1-2 n.1). The Bankruptcy Court did find, however, that Falling Creek is entitled to the return of its initial deposit, totaling $10,000. (Doc. 8-5, at 52).

Falling Creek takes issue with this award, arguing that it is also entitled to the expenses incurred in trying to acquire the Property and the expenses from attempting to obtain the necessary approvals for the police barracks, as was calculated in its Revised Statement of Damages. (Doc. 7, at 15-16; Doc. 9-4). Broncano-Damian responds that "[t]he underlying issue [with relying on the Revised Statement of Damages] is that Falling Creek included other expenses unrelated to the Agreement" "that do not, do not flow naturally from a breach of this Agreement but rather relate to contracts between Falling Creek and third parties." (Doc. 8-5, at 56; Doc. 15, at 17). Aligned with the Bankruptcy Court, this Court agrees.

The Bankruptcy Court's conclusions of fact and law are supported by the record in this case and long-standing case law. Again, the Court "review[s] the bankruptcy court's factual findings for clear error and legal questions *de novo*." *Wiley v. Olson,* No. CV 24-2237, 2025 WL 950388, at *3 (E.D. Pa. Mar. 28, 2025) (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994)). This Court defers to the Bankruptcy Court's finding that the Revised Statement of Damages submitted by Falling Creek does not clearly define expenses that flow naturally from the Breach of the Agreement and thus "Falling Creek has failed to file a revised claim for damages that is appropriately limited based on the Court's instructions on the record" because "it blends costs that could have been incurred solely for purchase of the [Broncano-Damain's]

property with costs that were incurred for its intended use of the property post-purchase." (Doc. 9-5, at 1-2 n.1). Thus, this Court agrees that there are no Falling Creek failed to establish recoverable damages "that can be proved with reasonable certainty" and that there is no clear error in the Bankruptcy Court's award of nominal damages in light of the record. *Dehart*, 679 F. App'x at 190. The Court will therefore **AFFIRM** the Bankruptcy Court's award of nominal damages for loss of the bargain.

    B.   F<small>ALLING</small> C<small>REEK'S</small> C<small>LAIM FOR</small> L<small>OST</small> R<small>ENTAL AND RESALE PROFITS</small>

Falling Creek next takes issue with the Bankruptcy Court's classification of its alleged lost rental and resale profit damages as "special damages," claiming instead these costs are appropriately understood to be expectation damages. (Doc. 7, at 18). Falling Creek argues that the Bankruptcy Court erroneously sustained Broncano-Damian's objections in regard to these damages.[1] (Doc. 7, at 18-21). Because "the loss of profit for lost rent and for resale, would naturally and ordinarily result from a breach," Falling Creek avers that it should be entitled to recover these damages. (Doc. 7, at 21). Broncano-Damian maintains "the Bankruptcy Court correctly found[] Falling Creek could not recover special damages because they were 'neither reasonably foreseeable, nor within the

---

[1] Falling Creek also suggests that the Bankruptcy Court sustained Broncano-Damian's Amended Objection "because the loss of profits was not plead [sic] in the Complaint filed in the Adams County case with specificity as to time and place[.]" (Doc. 7, at 17.) While the Bankruptcy Court did note that the allegations appeared to be lacking, the Bankruptcy Court specifically "refrain[ed] from determining whether these damages" were sufficiently pled under Pennsylvania law. (Doc. 8-5, at 59-60). This considered, the Court agrees with Broncano-Damian's conclusion that "there was no reason for the Bankruptcy Court to decide that issue because, as the Bankruptcy Court correctly found, Falling Creek could not recover special damages because they were 'neither reasonably foreseeable, nor within the contemplation of the parties at the time they made the contract.'" (Doc. 15, at 22).

11

contemplation of the parties at the time they made the contract.'" (Doc. 15, at 22).

The issue of lost profits and the classification of damages is a question of fact, and thus we review the Bankruptcy Court's findings for clear error. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). At issue is whether the Bankruptcy Court correctly determined that the lost rental and resale profits at issue are properly classified as "special damages." (Doc. 15, at 19). According to the Bankruptcy Court, "[s]pecial [d]amages are not ordinary damages that directly flow and naturally result from the debtor's breach of the contract for sale of this particular real estate." (Doc. 8-5, at 60). The Bankruptcy Court found that the lost rental and resale profits at issue here are special damages because they did not arise out of the sale for the land, but instead the intended use for the land which was not accounted for in the Agreement. (Doc. 8-5, at 74; Doc. 15, at 19, 21). Thus, Broncano-Damian "had no reason to know of Falling Creek's agreements and contracts with other entities, or of its intended use for the Property." (Doc. 15, at 20). The Bankruptcy Court concluded:

> [S]ince Falling Creek produced no evidence that would suggest that it was foreseeable that the debtor's failure to perform in the contract would result in the Financing Interest Damages, the Lost Profit Rental Damages, and the Lost Profit Resale Damages, the Court concludes that as a matter of law, Falling Creek cannot recover these costs as damages.

(Doc. 8-5, at 62).

A review of the record reflects that there is no clear error in this finding by the Bankruptcy Court. (Doc. 8-5). The record, as reflected by the filings before this Court, contains no evidence supporting an inference that Broncano-Damian knew or should have known that his failure to perform the contract would result in the special damages requested by Falling Creek, as they did not arise out of the sale but instead Falling Creek's intended use

of the land. Indeed, as indicated by the Bankruptcy Court, no testimony has been offered one way or the other, and no terms from the Agreement indicate how Falling Creek intended to use the Property. (Doc. 8-5, at 61). Accordingly, this Court will **AFFIRM** the Bankruptcy Court's findings and conclusions as they relate to special damages.

IV.    CONCLUSION

Based on the foregoing, the decision of the Bankruptcy Court is **AFFIRMED**. (Doc. 1). An appropriate Order will follow.

BY THE COURT:

*s/Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**
